UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SHARON SUE LAHAYE, ET AL.                                CIVIL ACTION

VERSUS

ASTRAZENECA PHARMACEUTICALS LP              NO.: 14-00111-BAJ-SCR

RULING AND ORDER

Before the Court is Defendants' **Motion to Dismiss for Failure to State a Claim (Doc. 24)**, filed by AstraZeneca Pharmaceuticals LP ("AstraZeneca"), seeking an order from this Court dismissing Sharon Sue LaHaye[1] and Robert Claude Lafayette's (collectively, "Plaintiffs") claims against it, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiffs oppose the motion. (Doc. 25). AstraZeneca filed a reply memorandum in opposition. (Doc. 28). Oral argument is not necessary. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

I. Background

Sharon Sue LaHaye ("LaHaye") and Robert Claude Lafayette ("Lafayette") commenced the instant action in the Nineteenth Judicial District for the Parish of East Baton Rouge on January 8, 2014, against AstraZeneca, seeking damages for injuries incurred as a result of ingesting the prescription drug Nexium. (Doc. 1-2). On February 19, 2014, following service of the Petition, AstraZeneca timely

---
[1] Sharon Sue LaHaye's name is spelled both as "LaHaye" and "Lahaye" at different times in the pleadings currently before the Court. For purposes of consistency, the Court will adhere to the spelling in both the original Petition and the Amending Complaint. (Docs. 1-2, 23).

1

removed the action to the United States District Court for the Middle District of Louisiana on the basis of diversity jurisdiction. (Doc. 1). On March 12, 2014, AstraZeneca filed a Motion to Dismiss for Failure to State a Claim, which Plaintiffs opposed. (Docs. 6, 9). On November 14, 2014, Plaintiffs sought leave to file an amended complaint, which the Magistrate Judge granted in spite of AstraZeneca's opposition. (Docs. 20, 21, 22). The Amended Complaint, styled "Amending Complaint," restated the original Petition in its entirety. (Doc. 23). AstraZeneca then filed the instant Motion to Dismiss on January 13, 2015. (Doc. 24). LaHaye's claims include liability for a defective product. (Doc. 23 at ¶ 21). Lafayette's claims include loss of consortium. (*Id.* at ¶ 21).

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. In short, the standard requires the plaintiff to provide "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545).

Notably, the United States Court of Appeals for the Fifth Circuit has held that a motion to dismiss "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Therefore, a court should grant a motion to dismiss only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitled him to relief. *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

### III. Analysis

#### A. Louisiana Products Liability Act

The Louisiana Products Liability Act ("LPLA") establishes "the exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. Ann. § 9:2800.52. Thus, a claimant may not recover on the basis of any theory not set forth in the LPLA.[2] *Stahl v. Novartis Pharm.*, 283 F.3d 254, 260 (5th

---

[2] Though the LPLA establishes the exclusive theory of liability against manufacturers for products that cause injury, courts have interpreted the LPLA as preserving redhibition as a cause of action to

3

Cir. 2002); *Jefferson v. Lead Indus. Assoc., Inc.* 106 F.3d 1245, 1250–51 (5th Cir. 1997).

To properly state a claim under the LPLA, a plaintiff has the burden of proving that (1) the defendant is a manufacturer; (2) the damage sustained was proximately caused by a characteristic of a product that made it "unreasonably dangerous" in one of four ways; and (3) that injury resulted from a reasonably anticipated use. La. Rev. Stat. Ann. § 9:2800.54; *Stahl*, 282 F.3d at 261. A product may be held to be unreasonably dangerous because of: (1) defective design; (2) defective composition or construction; (3) inadequate warning; or (4) breach of an express warranty. La. Rev. Stat. Ann. § 9:2800.54(B); *Stahl*, 282 F.3d at 261. Lastly, a plaintiff must prove that the "unreasonably dangerous" characteristic existed at the time the product left the manufacturer's control, or resulted from a reasonably anticipated alteration to the product. La. Rev. Stat. Ann. § 9:2800.54(C).

Here, Plaintiffs specifically allege, and indeed, AstraZeneca does not dispute that AstraZeneca manufactured Nexium, the product at issue. Plaintiffs also expressly allege that LaHaye was injured as a result of her use of Nexium. (Doc. 23 at ¶ 4). Specifically, Plaintiffs allege that LaHaye began taking Nexium in 2004, but ceased ingestion in January 2013, when she was diagnosed with clostridium difficile ("C. diff."), septic shock and toxic megacolon, which necessitated a colectomy. (*Id.* at ¶¶ 5, 11-12). LaHaye's treating surgeon, Dr. James W. Wade ("Dr. Wade"), later presented LaHaye's case at a conference of surgeons in which he

---

the extent that the plaintiff seeks recovery of economic losses. *See Pipitone v. Biomatrix*, 288 F.3d 239, 251 (5th Cir. 2002). However, as neither party raises or discusses a redhibition claim, it will not be addressed here.

4

suggested that the etiology of LaHaye's injuries was her taking the prescription Nexium for nine years. (*Id.* at ¶¶ 12-13). Accepting these factual allegations as true, the Court finds that Plaintiffs have pled sufficient facts to establish that LaHaye's use of the drug was reasonably anticipated, and that any damage she sustained was proximately caused by the ingestion of Nexium. *See* La. Rev. Stat. Ann. § 9:2800.53(7) (A "reasonably anticipated use" of the product is defined as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances."); *see also Cooper v. Wyeth, Inc.*, No. 09-929, 2010 WL 2653321 (June 25, 2010).

Plaintiffs also allege that AstraZeneca inserted "into the stream of commerce a product which was defective, unsafe and in an inherently dangerous condition; where it was expected to and in fact did reach . . . LaHaye, without substantial change in the condition in which it was manufactured . . . ." (Doc. 23 at ¶ 7). There being no direct opposition by AstraZeneca, and drawing all reasonable inferences in favor of Plaintiffs, the Court finds that this is sufficient to establish that the allegedly dangerous characteristic existed at the time Nexium left the manufacturer. Accordingly, to survive AstraZeneca's Motion to Dismiss, Plaintiffs' Amending Complaint need only demonstrate that Nexium was "unreasonably dangerous" in one of four ways.

AstraZeneca contends that "none of Plaintiffs' broad, conclusory and mechanically asserted allegations state a claim against AstraZeneca upon which relief can be granted; their unidentified, purported allegations are 'no more than

5

conclusions, [] not entitled to the assumption of truth.'" (Doc. 24-1 at p. 2) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)). In opposition, Plaintiffs aver that that if taken as a whole, their Amending Complaint adequate places AstraZeneca on notice that there is a viable claim under the LPLA, and that their "allegations surpass mere speculation and 'raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" (Doc. 25 at p. 11). More specifically, Plaintiffs contend that "a characteristic of the product made it unreasonably dangerous because of inadequate warnings, or because an express warranty was breached," and that their allegations "support a reasonable inference that Defendant's product was either improperly designed or improperly constructed or composed." (Doc. 25 at pp. 7, 9). Although Plaintiffs' Amending Complaint is somewhat lacking, in light of the complex and technical nature of this type of claim, the Court finds that Plaintiffs have met their burden at this preliminary stage.

First, Plaintiffs specifically allege that AstraZeneca "inserted into the stream of commerce a product which was defective, unsafe and in an inherently dangerous condition." (Doc. 23 at ¶ 7). Plaintiffs also aver that AstraZeneca "created, designed, manufactured, tested, formulated, advertised, marketed, promoted, sold and/or distributed the drug Nexium." (*Id.* at ¶ 2). Plaintiffs further allege that Nexium was "unreasonably and inherently dangerous, not of merchantable quality, not appropriately and sufficiently tested, and defective." (*Id.* at ¶ 9). They also state that AstraZeneca breached its "implied warranties." (*Id.*). Albeit sparse, the Amending Complaint fleshes out Plaintiffs' allegations by stating that the label did

6

not properly warn LaHaye or her treating physician of the possible "deleterious side effects" caused by ingesting Nexium or "the relationship between Nexium and C. diff. and the extreme danger involved". (*Id.* at ¶¶ 10, 16-18).

Additionally, Plaintiffs aver that the nature of the alleged defect is that long-term consumption of Nexium increases the risk of contracting clostridium difficile ("C. diff."), which may cause "septic shock and toxic megacolon," necessitating a colectomy. (Doc. 23 at ¶¶ 5, 11, 12). On just these facts, it appears as though Plaintiffs have at least implicitly pled an alternative design – a medication that would not cause C. diff or lead the party who ingested Nexium to require a colectomy. *See, e.g., Winslow v. W.L. Gore & Assoc, Inc.*, No. CIV. A. 10-116, 2010 WL 866184, at *2 (W.D. La. Jan. 21, 2011), *report and recommendation adopted as modified sub nom., Winslow v. W.L. Gore & Associates, Inc.*, No. CIV. A. 10-00116, 2011 WL 873562 (W.D. La. Mar. 11, 2011) (denying a motion to dismiss where "plaintiff implicitly pled alternative design");[3] *Corley v. Stryker Orthopaedics*, No. 13-2571, 2014 WL 3125990, at *1-2 (W.D. La. July 3, 2014) (concluding that the plaintiff had inferentially made sufficient allegation, and observing that at the

---

[3] Interestingly, the *Winslow* court also noted:

> While defendants are correct in their quoting of *Twombly* and *Iqbal*, it must be remembered that neither was a products liability suit. While the pronouncements in the cases are nonetheless applicable, this is a products liability case where almost all of the evidence is in the possession of defendant or other entities. Proof will necessarily be technical in nature and it is likely impossible for plaintiff to state more specific allegations regarding defects in manufacture and design without first having the benefit of discovery and of expert analysis, neither of which is required in order to file suit.

*Winslow*, 2010 WL 866184, at *2. The Court finds this argument to be similarly compelling in the instant case.

motion dismiss stage, "the plaintiff need not prove her claim in her complaint; she need only sufficiently allege her claim at this stage of the litigation."). In addition Plaintiffs allege that Nexium was "not appropriately and sufficiently tested," and that AstraZeneca failed "to exercise reasonable care by adequately and properly testing Nexium before and after placing it on the market." (*Id.* at ¶¶ 9, 19).

With respect to their failure to warn claim, Plaintiffs assert that in February of 2012, "the United States Food and Drug Administration issued a drug safety communication notifying the public that the use of protein pump inhibitors (PPIs) such as Nexium may be associated with an increased risk of C. diff. infection." (Doc. 23 at ¶ 14). In July of 2012, "the *American Journal of Gastroenterology* revealed a 65% increase in the incidence of C. diff. among users of PPIs including Nexium." (*Id.* at ¶ 15). Moreover, Plaintiffs allege that LaHaye's C. diff. diagnosis and subsequent colectomy resulted from ingesting Nexium. (*Id.* at ¶¶ 4, 5). Plaintiffs further aver that AstraZeneca was "required to warn a user of the product of the dangerous nature," but failed to do so here. (Doc. 23 at ¶ 10). More specifically, Plaintiffs allege that "the warnings on Nexium did not properly alert" LaHaye or her treating physician that "a patient taking Nexium may be at risk for C. diff." (*Id.* at ¶ 16). Indeed, Plaintiffs aver that AstraZeneca "failed to exercise reasonable care by including adequate warnings with the medication that would alert plaintiff, her physicians and other consumers to the potential risks and serious side effects." (*Id.* at ¶ 19(c)). As a result, neither LaHaye nor her treating physician were aware of "the deleterious side effects" that could result from ingesting Nexium. (*Id.* at ¶ 17).

Plaintiffs also allege that AstraZeneca "fail[ed] to exercise reasonable care by providing adequate post-market warnings or instructions after it knew or should have known of the significant risks of personal injury" like those experienced by LaHaye. (*Id.* at ¶ 19(f)). Nevertheless, AstraZeneca continued to promote and market Nexium to users and the medical community as well as represent that Nexium was "safe, of merchantable quality." (*Id.* at ¶ 8).

Although Louisiana law does not permit a fact finder to presume an unreasonably dangerous design solely from the fact that injury occurred, *see Ashley v. GMC,* 27851-CA, p. 5 (La. App. 2 Cir. 1/24/96); 666 So.2d 1320, 1322, the Court is mindful that Plaintiffs have not yet been given the benefit of discovery. To comply with Rule 8(a)(2), a plaintiff need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly,* 550 U.S. at 555 (quoting *Conley,* 78 S. Ct. at 103). The Court recognizes that Plaintiffs' Amending Complaint is lean and could benefit from more specific or detailed factual allegations, but it cannot be said that Plaintiffs' allegations fail to "surpass mere speculation and 'raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re S. Scrap Material Co., LLC,* 541 F.3d at 587. Therefore, the Court finds that Plaintiffs have met their burden at this preliminary stage. In so finding, the Court is mindful that much of the evidence in pharmaceutical products liability cases may be in the defendant's possession, and thus, without the benefit of discovery, stating more specific allegations may be nearly impossible at this stage. *See Winslow,* 2010 WL 866184, at *2.

Finally, in support of its motion,[4] AstraZeneca correctly asserts that Louisiana applies the "learned intermediary doctrine" to products liability claims involving prescription drugs. (Doc. 24-1 at p. 9). Under this doctrine, a drug manufacturer discharges its duty to consumers by reasonably informing prescribing physicians of the dangers that may result from taking a particular drug. *Anderson v. McNeilab, Inc.*, 831 F.2d 92, 93 (5th Cir. 1987) (citing *Cobb v. Syntex Laboratories, Inc.*, 444 So.2d 203 (La. App. 1 Cir. 1983)). Thus, to prevail on a failure to warn claim, a plaintiff must show: (1) that the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that was not otherwise known to the physician, and (2) that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury. *Stahl*, 283 F.3d at 265-66 (citing *Willett v. Baxter Int'l Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991)).

Contrary to AstraZeneca's assertion, the mere fact that Plaintiffs failed to allege the identity of LaHaye's prescribing physician is not dispositive. Moreover, AstraZeneca's evaluation of Dr. Wade's assessment is equally unavailing. While AstraZeneca may ultimately succeed in establishing that Dr. Wade was not qualified to render an opinion regarding the cause of LaHaye's injuries, the Court is not permitted to assess Dr. Wade's expertise or credibility at this stage. Indeed, all

---

[4] In further support of its motion, AstraZeneca submitted a "true and accurate copy" of the 2001 Nexium Label as well as several FDA Drug and Safety Communications. (Doc. 24-1 at p. 10 n.4., Docs. 24-2, 24-3, 24-4). The label discloses the possible risk of diarrhea and clostridium-difficile-associated colitis with the use of antibiotic therapy. (*Id.*). AstraZeneca argues that the Court may take judicial notice of these documents, but without the benefit of additional facts regarding the nature of LaHaye's initial diagnosis, treatment, or a more comprehensive analysis regarding the relationship between C. diff. and Nexium, the Court is not inclined to do so at this preliminary stage. Thus, these exhibits will have no bearing on this ruling.

10

that is required is that Plaintiffs provide enough facts "to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d at 587. The Court finds that Plaintiff's Amending Complaint has met this standard. As stated previously, Plaintiffs' Amending Complaint alleges that AstraZeneca failed to warn users of Nexium of the dangerous nature of the product, and "[b]reached its duty with its actions and omissions to plaintiff and her physicians." (Doc. 23 at ¶¶ 10, 19(b)). Specifically, "[n]either the product's package insert nor the *Physician's Desk Reference* (PDR) properly alerted the patient or the patient's doctor of the relationship between Nexium and C. diff. and the extreme danger involved" or to other "potential risks and serious side effects." (*Id.* at ¶¶ 16-18, 19(c)). Finding this to be sufficient, the Court declines to dismiss Plaintiffs' Amending Complaint on these grounds.

### IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that AstraZeneca's **Motion to Dismiss (Doc. 24)** is **DENIED**.

Baton Rouge, Louisiana, this 28th day of April, 2015.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**